**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVELTON STROMAN | |
| JONATHAN BRUMFIELD | |
| JOYNUL ABEDIN | |
| TABITHA ACABA | |
| HAYDEE ACEVEDO | |
| LATEEFAH ADAMS | |
| BRENDA ALBERT | |
| MANUEL ALICEA | |
| DAINA ALLEN | |
| TANISHA ALLEYNE | |
| KESIA ALVAREZ | |
| MARTIN ALVAREZ | |
| ROBERTO ALVAREZ | |
| RONALD ANDRE | |
| ALEX ANDUJAR | |
| ROXANNE AQUART | |
| MARGIE ARRUFAT | |
| JOSE ASTI | Case No. _____ |
| MAX ASTUDILLO | |
| TED AUGUSTIN | (JURY TRIAL DEMANDED) |
| NAOMI BAILEY | |
| LEONARD BAILEY | |
| DOUGLAS BAKER | |
| KIRK BALDWIN | |
| JAMAL BARKSDALE | |
| KSHANEE BARNES | |
| ZYLIA BARRINGTON | |
| AJAMU BARRY | |
| WILMA BARTON | |
| DESMOND BARTON | |
| SHADAY BATTLE | |
| JUAN BEATO | |
| DIONNE BECKETT | |
| MARCIA BEDELL | |
| EMRAH BEKTESEVIC | |
| TRACY BENJAMIN | |
| LATAISHA BENNERMAN | |
| JEROME BENNETT | |
| VANESSA BERRY | |
| MELISSA BETHELMIE | |
| MOHAMMED BILITY | |
| ALISIA BLACKMAN | |
| MIRACLE BLAIR | |

KHADIJAH BOONE
LYMIK BOYD
JENNIFER BRAGGS
KIM BRENT
KAMEL BRITTON
ANTONIO BROWN
DEBORAH BROWN
NADIRAH BROWN
TERISH BROWN
THOMASINA BROWN
WHITNEY BROWN
CRAIG BROWN
DANIEL BROWN-BESS
DARREN BROWNO
BRANDON BULLOCK
FLORINE BUMPARS
AUTUMN BURGESS
STEVEN BURGOS
STEVEN BURNS
KIM CALDWELL
LATOYA CALLAHAN
HENRY CAMPBELL
JOSHUA CAMPBELL
SONYA CANNON
JASON CARAMES
JAVONNE CARDWELL
JOSE CASTRO BASTARDO
BERGIN CHALAS
EBONY CHANCE
DAVID CHOI
AYOLETTA CLARKE
JODI-ANN CLARKE
RAMANO CLARKE
RAVEN CLEMENTE
ROSALYN COARD
TAYEZ COBAY
TEMPESTT COLLADO
NICKEY COMMRIE
JAMES COOPER
VANESSA COOPER
JOHAN CORDERO
TAKI'YAH CORLEY-SANTOS
FERIDA COSAJ
SHANEEDA COSTON
DEJUAN COTTLE
JOHANNA COTTO

WILBUR COTTO
TYQUITHIA COTTON
SIERRA CRISMALI
CHARIE CROTHERS
CARLOS CRUZ
HECTOR CRUZ
SAMANTHA CRUZ
PRISCILLA CUNNINGHAM
YVE CYRIAQUE
CHRISTOPHER D'ANGELO
ROBERT DANIEL,

        Plaintiffs,

   v.

CITY OF NEW YORK,

        Defendant.

## COMPLAINT

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their complaint against the City of New York ("City" or "Defendant"), hereby state as follows:

## INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, City of New York in the positions of Special Officer and/or Sergeant in the Department of Homeless Services ("DHS"). Plaintiffs bring this action against Defendant for back pay, liquidated damages, attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA. The

Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work outside of their regularly scheduled shifts and during their unpaid meal periods. Plaintiffs are also similarly situated to each other because, while employed by the City, they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant fails to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based. Lastly, Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant fails to pay overtime compensation in a timely manner.

### PARTIES

3.     All Plaintiffs identified in the caption gave their written consent to be party Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint as Exhibit A. These written consent forms set forth Plaintiff's name and signature.

4.     Each of the Plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5.     Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, NY 10007 and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

8. Plaintiffs at all times material have been employed by the City in the Department of Homeless Services as a Special Officer and/or Sergeant.

9. For example, Plaintiff Evelton Stroman worked in the title of Sergeant as an Instructor at the DHS Academy between 2022 and August of 2024. Between August 2024 and June 2025, Plaintiff Stroman worked as a Special Officer at the DHS facility located at 400 E 30th Street, New York, New York, 11016. At all times material, Plaintiff Jonathan Brumfield has worked as a Sergeant at the DHS facility, BRC McGuiness, located at 146 Clay Street, Brooklyn, New York, 11222.

10. Within the last three years and continuing to date, while employed by Defendant as Special Officers with DHS, the job duties of Special Officers have included but are not limited to: guarding DHS personnel and property as assigned; investigating suspicious conditions and circumstances; giving attention to hazardous conditions; maintaining an activity log; maintaining records and submitting written reports; patrolling DHS facilities; taking necessary actions to maintain order, and prevent theft and destruction; and making arrests on DHS premises.

11. Within the last three years and continuing to date, while employed by Defendant as Sergeants with DHS, the job duties of Sergeants have included but are not limited to: supervising all police operations within the facility during tour of duty; immediately responding to incidents involving arrests or other emergencies; inspecting uniforms and equipment; conducting

investigations and submitting reports on injuries to staff members or damage to DHS property; maintaining an activity log; patrolling facilities; keeping desk officers notified of current matters of importance; preparing and maintaining bulletin boards and assuring notifications are current and authorized; and distributing DHS directives as required.

12. While working as Special Officers or Sergeants, all Plaintiffs routinely work over 40 hours per week and do not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a workweek. Specifically, Special Officers and Sergeants are scheduled to work 42 hours and 30 minutes per week, as their regular weekly schedule (i.e., five shifts of eight and one half hours each week), with 30 minutes automatically deducted from each shift for an unpaid meal period. In addition, as described in further detail below, all Plaintiffs frequently perform the job duties described in Paragraphs 10-11 outside of their scheduled shifts and during their 30-minute unpaid meal periods.

13. Because Plaintiffs are scheduled for shifts totaling 42 hours and 30 minutes per week with 30 minutes per day automatically deducted for meal periods, they are scheduled to work, and do work, at least 40 hours per work week. Thus, any time that all Plaintiffs perform the uncompensated job duties described in Paragraphs 10-11 outside of their regularly scheduled shifts or during their unpaid meal periods, they necessarily perform overtime work above the 40 hour per workweek threshold that the FLSA establishes as requiring overtime pay. 29 U.S.C. § 207(a).

14. Plaintiffs and all others similarly situated work over 40 hours performing the job duties described in Paragraphs 10-11. Defendant City of New York has violated the FLSA by failing to compensate Plaintiffs for work performed outside of their scheduled shifts and during their unpaid meal periods.

15.     Additionally, when Plaintiffs perform preapproved overtime work for which Defendant does compensate them, Defendant nevertheless systematically fails to pay them for this overtime work at the correct regular rate of pay and systematically fails to pay them in a timely manner.

### *Defendant's Fair Labor Standards Act Violations Are Willful*

16.     Upon information and belief, Defendant compensates Plaintiffs on a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out). As such, although minutes of Plaintiffs' pre-shift and post-shift work time are captured by their timecards and entered into timesheets that are reviewed on a weekly basis by Plaintiffs' supervisors, Plaintiffs are nevertheless only paid for their scheduled shift hours unless they have received pre-approval to work overtime.

17.     Defendant is aware that its "pay-to-schedule" system unlawfully fails to capture Plaintiffs' actual working hours and fails to pay employees for all compensable work time. Indeed, in a previous case, *Perry v. City of New York*, the Second Circuit affirmed an October 2019 jury verdict in favor of the plaintiffs in the amount of $17.78 million for willful FLSA violations, including failing to pay for pre-shift and post-shift work recorded on CityTime. 78 F.4th 502 (2d Cir. 2023). Notably, in that same case, the Second Circuit also affirmed that "knowledge of non-payment is irrelevant to FLSA liability." *Id.* at 515.

18.     Defendant is also well aware of its obligation to pay employees for overtime work that is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' supervisors. *See, e.g.*, *Foster v. City of New York*, 2017 WL 11591568 (S.D.N.Y. Sept. 30, 2017) (granting summary judgment for

plaintiff New York City employees on FLSA claims that they worked uncompensated overtime about which their managers were aware); *De La Cruz v. City of New York*, 2017 WL 11591568 (S.D.N.Y. Sept. 30, 2017) (same). In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, Case No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of Georgia M. Pestana October 16, 2019) at 969-70. However, at all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work which is performed with their supervisors' knowledge.

19.     The City has been held liable for failing to pay for recorded pre-shift and post-shift work on multiple occasions, yet has made no changes to the manner in which it records or compensates Plaintiffs for their overtime work. *See, e.g.*, *Foster v. City of New York*, 2017 WL 11591568 (S.D.N.Y. Sept. 30, 2017) (granting summary judgment for plaintiff New York City employees on FLSA claims that they worked uncompensated overtime about which their managers were aware, despite required use of the CityTime system); *De La Cruz v. City of New York*, 2017 WL 11591568 (S.D.N.Y. Sept. 30, 2017) (same); *Perry v. City of New York*, 1:13-cv-01015 (S.D.N.Y) (jury verdict in favor of plaintiffs, $17,780,063 judgment entered); *Worley v. City of New York*, Case No. 17-cv-04337 (S.D.N.Y.) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware). *See also Perez v. City of New York*, 2017 WL 4326105 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that Associate Urban Park Rangers failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours).

20.    In November of 2016 and November 2017, individuals employed by Defendant as Special Officers and Sergeants with DHS, including but not limited to numerous individuals who are Plaintiffs in this case, brought suit against Defendant seeking compensation for pre-shift, post-shift, and meal period work in accordance with the FLSA. *Campbell v. City of New York*, No. 1:16-cv-8719 (S.D.N.Y.); *Brown v. City of New York*, No. 1:17-cv-09078 (S.D.N.Y.). Since the filing of the *Campbell* and *Brown* lawsuits, and through to the present, Defendant has failed to make meaningful changes to its pay policies and practices with respect to DHS Special Officers and Sergeants, which continue to violate the FLSA.

21.    Defendant has failed to conduct an audit or otherwise investigate the amount of uncompensated work performed outside of the Plaintiffs' paid shifts and during unpaid meal period times.

22.    Defendant has failed to seek advice from the United States Department of Labor regarding whether its pay policies and practices comply with the FLSA.

23.    Supervisors are aware of when Plaintiffs are working, and the nature and timing of the work, even if it happens outside of the Plaintiffs' scheduled shifts, or during a meal period because, among other things, Defendant tracks Plaintiffs' worktime through their time cards and timesheets, Plaintiffs' supervisors observe and are notified when uncompensated work is being performed and review Plaintiffs' time records, and as Defendant is aware, the nature of Plaintiffs' work requires them to work this additional time

24.    Defendant has not disciplined any Special Officer or Sergeant for performing unpaid work outside of their scheduled shifts, or for working during their unpaid meal periods.

### *Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated*

25.    While working as Special Officers and Sergeants, Plaintiffs and all others similarly

situated routinely work over 40 hours a week. Plaintiffs are scheduled for five shifts of eight and one-half hours in length each week, with thirty minutes automatically deducted from each shift as an uncompensated meal period. Thus, Plaintiffs and all others similarly situated are scheduled to perform and do perform a minimum of 40 hours of work per workweek. In addition, Plaintiffs regularly work pre-approved overtime each week for which they are compensated.

26. In addition to their 40 hours of regularly scheduled shifts and paid and ptr-approved overtime, Plaintiffs and all others similarly situated frequently work additional hours in which they perform their regular job duties outside of their regularly scheduled shifts, and during their unpaid meal periods, all without overtime compensation. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours that are in excess of 40 in a workweek.

27. Plaintiffs employed as Special Officers must routinely perform the job duties described in Paragraph 10, outside their regular schedule, including before and after their shift and during their meal period, because they must prepare for roll call, gather necessary equipment— including handcuffs, taser guns, utility belts, OC spray (pepper spray), baton, flashlights, gloves, and body cameras—and change into their uniforms before their scheduled shift begins, and because they must respond to and record incidents and emergencies and cannot leave their posts for meals or at the end of their shift unless they are properly relieved.

28. Plaintiffs employed as Sergeants must routinely perform the job duties described in Paragraph 11 outside their regular schedule, including before and after their shift and during their meal period, because they must prepare for roll call, gather necessary equipment, and change into their uniforms before their shift begins, and because they cannot leave their posts for meals or at the end of their shift unless they are properly relieved.

10

29.     For example, Plaintiff Stroman, as a Sergeant, routinely worked over 40 hours in a workweek when working as an Instructor at the DHS Academy. When he did so, Defendant failed to compensate him for all of his work time. Specifically, at the Academy, Plaintiff Stroman regularly worked between 7:30 am and 4:00 pm. Plaintiff Stroman regularly arrived approximately 30 minutes prior to the start of his scheduled shift, and immediately began working upon arrival, without being compensated for the pre-shift work time, by reviewing and preparing curriculum and cleaning up the classroom. Plaintiff Stroman also worked through his uncompensated meal period approximately 4 times per week. Thus, at the Academy, Plaintiff Stroman was not compensated for approximately 4 hours and 30 minutes of additional overtime work beyond his scheduled, paid shift each week.

30.     When assigned as a Special Officer to the 30th Street DHS facility, Plaintiff Stroman also routinely worked over 40 hours in a workweek. When he did so, Defendant failed to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 10 and 27 outside of his scheduled shift, and during his 30-minute unpaid meal period. Specifically, Plaintiff Stroman regularly worked between 11:30 pm and 8:00 am, and 7:30 am and 4:00 pm. Plaintiff Stroman regularly arrived approximately 30-45 minutes prior to the start of his scheduled shift, and immediately began working upon arrival, without being compensated for the pre-shift work time, by gathering and testing required equipment, labeling body camera footage, updating his memo book, cleaning around the area, and other work tasks described in Paragraphs 10 and 27. Plaintiff Stroman also worked through his uncompensated meal period approximately 4 times per week, performing the duties listed in Paragraphs 10 and 27. Thus, Plaintiff Stroman was not compensated for at least 4 hours and 30 minutes, and as much as 5 hours and 45 minutes of additional overtime work beyond his scheduled, paid shift each week.

31.    For example, when working for Defendant as a Sergeant, Plaintiff Brumfield routinely works over 40 hours in a workweek. When he does so, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 28 outside of his scheduled shift, and during his 30-minute unpaid meal period. Specifically, Plaintiff Brumfield's regularly scheduled shift begins at 11:00 pm and ends at 7:30 am. Plaintiff Brumfield arrives approximately 10-20 minutes prior to the start of his scheduled shift, and immediately begins working upon arrival, without being compensated for the pre-shift work time, performing tasks including researching roll call training topics, reading command logs, debriefing with outgoing Sergeants, and other work tasks described in Paragraphs 11 and 28. Plaintiff Brumfield also works through his uncompensated meal period approximately 3-4 times per week, performing the duties listed in Paragraphs 11 and 28. Thus, Plaintiff Brumfield was not compensated for at least approximately 2 hours and 20 minutes, and as much as 3 hours and 40 minutes of additional overtime work beyond his scheduled, paid shift each week.

32.    All Special Officers and Sergeants employed by Defendant for DHS are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant fails to compensate Special Officers and Sergeants for work performed outside of their scheduled shift and meal period that was not pre-approved in advance. The amount of uncompensated overtime work hours outside the scheduled shifts for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records, which are in the Defendant's exclusive custody and control.

### ***The Rate at Which Overtime is Paid***

33.     When Plaintiffs work in the evenings between the hours of 6:00 pm and 6:00 am, they receive night shift differential pay of ten percent (10%) of their basic rate of pay. In calculating cash overtime payments for Plaintiffs, Defendant fails to include night shift differential pay in the regular rate of pay at which overtime is paid to the Plaintiffs.

34.     Plaintiffs and all other individuals employed by defendant at DHS in the positions of Special Officer and Sergeant are provided a premium payment entitled "meal allowance" when they work at least 2 consecutive hours of "approved" overtime and are compensated in compensatory time. The amount paid varies with the number of consecutive hours of pre-approved and "authorized overtime" worked. The meal allowance is taxed as ordinary income to the Plaintiffs.

35.     All Special Officers and Sergeants employed by DHS who receive premium payments pursuant to Agency-wide policy and/or collective bargaining agreements, including Plaintiffs, are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation because Defendant continues to miscalculate the regular rate by failing to include, among other things, night shift differential pay and/or meal allowances. The precise amount of night shift and other differential pay Special Officers and Sergeants receive can be identified through CityTime and through other work and pay records, and thus the amount of damages can be determined that result from Defendant's failure to include these payments in the regular rate of pay at which overtime is paid.

36.     Within the last three years, as well as before, the City has been repeatedly held liable for failing to include these differentials in the regular rate of pay when Plaintiffs earned a differential and worked overtime in the same week. *See Lawtone-Bowles v. City of New York*, 2020 WL 2833366 (S.D.N.Y. Jun. 1, 2020) (granting summary judgment to Plaintiffs on claims that the

13

City failed to include meal allowances and other differentials in the regular rate of pay for Motor Vehicle Operators who work for DHS); *Foster*, 2017 WL 11591568 at *33-35 (granting summary judgment to Plaintiffs, finding that the City's failure to include meal allowances and night shift differentials in the regular rate of pay constitutes an FLSA violation); *Lynch v. City of New York*, 291 F. Supp. 3d 537 (S.D.N.Y. 2018) (same); *Worley v. City of New York*, 2020 WL 730326, at *7 (S.D.N.Y. Feb. 12, 2020) (same).

### *Late Payment of Overtime Worked*

37.    During the last three years, when the City does compensate Plaintiffs for hours worked over 40 in a workweek, the City regularly delays the payment of overtime beyond the next pay period for which the Plaintiffs are paid for their regular work hours and in compensatory time for their overtime hours. These late payment violations are readily apparent from the Defendant's pay and hours worked data, which is in the exclusive possession of the Defendant.

38.    The delay in payment is done either because of managerial delays in acquiring the required approvals to pay Plaintiffs for their overtime, or for other reasons that are unrelated to the City's ability to determine the amount of overtime compensation that is owed to the Plaintiffs. Defendant has violated the basic principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends.

39.    All Special Officers and Sergeants employed by Defendant such as the Plaintiffs are similarly situated and routinely work more than 40 hours in a workweek but are routinely compensated for pre-approved overtime work in an untimely manner (i.e., more than two pay periods after the overtime was worked). The precise amount of untimely paid overtime received

by each Plaintiff can be identified through the Defendant's timekeeping system and through other work and pay records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

40. Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

41. At all times material herein, during those workweeks in which Plaintiffs have worked in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 10-11 and 27-28 outside of their scheduled shifts and without compensation, all of which is recorded on Defendant's timekeeping system. Plaintiffs have also performed work, including but not limited to the tasks enumerated in Paragraphs 10-11 and 27-28, during their unpaid meal periods. This work outside of Plaintiffs' scheduled shifts and during their meal periods has caused Plaintiffs to work in excess of 40 hours in a given week. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

42. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours the employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA in the manner outlined herein by failing to compensate Plaintiffs for work that they

have been suffered or permitted to work outside of their scheduled shifts, and during their uncompensated meal periods.

43. As a result of Defendant's willful and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work and pay records for Plaintiffs are in the exclusive possession, custody, and control of the Defendant and its public agencies, and the Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA.

44. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs from which the amount of Defendant's liability can be ascertained.

45. Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

46. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7 OF THE FLSA

47. Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

48. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has

16

failed to include certain premium payments such as night shift differential pay and/or meal allowances in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs, resulting in Defendant paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include all applicable forms of compensation in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

49.    As a result of the Defendant's willful and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work and pay records for Plaintiffs reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

50.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

51.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR EVEN MONTHS AFTER THE OVERTIME HAS BEEN WORKED

52.    Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

17

53.     The FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owed, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying for weeks, Plaintiffs' overtime payments for working in excess of 40 hours a week, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments, management withholding such payments until the next budgetary quarter, or some other reason unrelated to Defendant's ability to calculate the amount owed to Plaintiffs.

54.     As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc.*, et al., "[w]hile 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck [under the FLSA].'" 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

55.     As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work and pay records for the Plaintiffs are in the exclusive possession, custody and control of Defendant, and Plaintiffs are unable to state at

this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

56.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their late paid overtime for the Defendant's failure to pay overtime compensation in a timely manner.

57.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(b) Award Plaintiffs monetary damages in the form of backpay for their unpaid compensation;

(c) Award Plaintiffs monetary liquidated damages equal to their unpaid compensation;

(d) Award Plaintiffs interest on their unpaid compensation;

(e) Award Plaintiffs their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Date: November 13, 2025

Respectfully submitted,

*/s/ Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON, LLP
1040 Avenue of the Americas, 20th Floor
New York, NY 10018
Phone: (212) 765-2100
hpordy@spivaklipton.com
esprotzer@spivaklipton.com

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
Sarah M. Block
Rachel B. Lerner
McGillivary Steele Elkin LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
smb@mselaborlaw.com
rbl@mselaborlaw.com

*Counsel for Plaintiffs*